UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNETTE SUZANNE KONIDIS,

                          Plaintiff,

                                                    **Hon. Hugh B. Scott**

            v.                                      **14CV565A**

                                                    **Report
                                                    and
CAROLYN W. COLVIN, Acting                           Recommendation**
Commissioner of Social Security[1],

                    Defendant.

_____

     Before the Court are the parties' respective motions for judgment on the pleadings (Docket

Nos. 11 (plaintiff), 17 (defendant Commissioner)).

## INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

     The plaintiff ("Annette Konidis" or "plaintiff") filed an application for disability insurance

benefits on June 16, 2011.   That application was denied initially and on reconsideration.   The

plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo

and concluded, in a written decision dated September 14, 2012, that the plaintiff was not disabled

---

[1]On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social
Security.   Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the
now former Commissioner Michael Astrue as Defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

within the meaning of the Social Security Act.   The ALJ's decision became the final decision of

the Commissioner on May 16, 2014, when the Appeals Council denied plaintiff's request for

review.

Plaintiff commenced this action on July 14, 2014 (Docket No. 1).   The parties moved for

judgment on the pleadings (Docket Nos.11, 17).   The motions were deemed submitted on

March 30, 2015.

## FACTUAL BACKGROUND[2]

Plaintiff was born in September 1963, and was 48 years old at the time of the hearing

before the ALJ (R. 35).   Plaintiff has her GED and attended business college for accounting.   She

worked as a bookkeeper, last working in 2005 (R. 21).   Plaintiff lived in Arkansas when she

applied for Social Security benefits (R. 162), but now lives in Kenmore, New York (Docket No. 1,

Compl.).

Plaintiff claims impairments due to obesity (weighing 208 pounds at 5'3"), chronic

obstructive pulmonary disease (or "COPD"), sleep apnea, loss of grip in hands and wrists,

sensitivity to light and sound, fatigue, depression, leg edema, high blood pressure and degenerative

disc disorder (R. 19, 20).   Although she was a bookkeeper, plaintiff claimed that she was unable

to balance a checkbook and was "messing up accounts at work before she quit" (R. 21, 38).   Her

husband testified that she could not concentrate to pay bills or deal with bank accounts (R. 25, 231,

253).

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff had no musculoskeletal system impairments, no respiratory

system or cardiovascular system impairments, no neurological disorders that satisfied criteria for

---

[2]References noted as "(R.___)" are to the certified record of the administrative proceedings.

2

Social Security listings for the respective ailments, concluding that plaintiff's health improved with treatment (R. 19; Docket No. 17, Def. Memo. at 9-10).   She had little evidence of claimed mood disorders.   Applying the "paragraph B" criteria, the ALJ found that plaintiff had mild limitation on her activities of daily living, social functioning, and concentration, persistence and pace (R. 19), while plaintiff did not experience any episodes of decompensation (R. 19).   The ALJ found that plaintiff to have severe impairments for obesity, COPD, and hypertension (R. 18; Docket No. 11, Pl. Memo. at 18), found that her claimed anxiety and depression were non-severe impairments (R. 18; Docket No. 11, Pl. Memo. at 18), as well as claimed sleep apnea and mild degenerative disc disease (R. 18).

Plaintiff testified that she lived in an apartment complex for persons with disabilities since she stopped working in May 2005 (R. 61).   Before losing her job, plaintiff would miss three or four days a week at work or come in late (R. 63).   While at work, plaintiff would "sleep, or go into some kind of trance" and she would have to be awakened and claimed that she could not concentrate without falling asleep (R. 63).   Due to her COPD, plaintiff's breath is labored and she deemed strenuous activity taking a shower and prevents her from cleaning (R. 65).   She claims that she could not be exposed to chemicals (R. 65).   Plaintiff also blacked out from the labored breathing (R. 66-67).   Plaintiff complains of not being able to focus or stay focused (R. 71).   She surrendered her driver's license for medical reasons (R. 71-72).

The ALJ found that plaintiff's medically determinable impairments could be reasonably be expected to cause the symptoms but did not credit plaintiff's statements concerning intensity, persistence, and limiting effects of these symptoms "to the extent that they are inconsistent with the . . . residual functional capacity assessment" (R. 21).   The ALJ found that plaintiff had a

3

residual functional capacity to perform a full range of light work without severe or non-severe

limitations (R. 20).

*Plaintiff's Depression*

On September 14, 2006, plaintiff was treated for shortness of breath and depression

(R. 330; Docket No. 11, Pl. Memo. at 5).   She reported that she had "too many losses" (R. 330)

and was prescribed Paxil and Albuterol (R. 331; Docket No. 11, Pl. Memo. at 5).   On a follow up

examination, on October 12, 2006, plaintiff was diagnosed with (among other ailments)

depression (R. 328; Docket No. 11, Pl. Memo. at 6).   On January 9, 2007, plaintiff reported to

physician assistant, noting her mood was "stable" (R. 326, 327; Docket No. 11, Pl. Memo. at 6).

On February 22, 2007, plaintiff was examined for other medical conditions and was diagnosed

with general anxiety disorder ("GAD") (R. 325).   On April 5, 2007, plaintiff underwent a

consultative general physical examination at the behest of the Social Security Administration,

stating a medical history that includes (again, among other ailments) depression (R. 285; Docket

No. 11, Pl. Memo. at 6).   The examining physician also diagnosed depression (R. 291; Docket

No. 11, Pl. Memo. at 6).   Next month, on May 8, plaintiff reported to her physician assistant that

she was distraught and somewhat depressed (R. 323; Docket No. 11, Pl. Memo. at 6).   At a follow

up appointment on May 15 2007, plaintiff complained of being "quite distraught" upon seeing an

accident on her way to the appointment and her Paxil dosage was increased (R. 321; Docket

No. 11, Pl. Memo. at 7).   Plaintiff sought a refill of her medication, on July 7, 2007, saying that

she was tired all the time and slept a lot, which the physician assistant opined was "probably a

reflection of depression" (R. 319).   She stated that she was not as depressed that visit and that

Paxil was helping, but the physician assistant's assessment continued to be depression (R. 319).

On December 6, 2007, plaintiff reported to the physician assistant for refills and was diagnosed with mood disorder and had Paxil refilled (R. 316).

Plaintiff's medical records after this focused on her other ailments (see generally Docket No. 11, Pl. Memo. at 7-10).   On October 28, 2010, plaintiff is treated by Dr. William Hayes, who assessed her as having depression (R. 375; Docket No. 11, Pl. Memo. at 10).   During the examination, she had mildly depressive affect with good eye contact and appeared well groomed (R. 375).   On January 27, 2011, plaintiff again was examined by Dr. Hayes and the depression was "stable" (R. 379; Docket No. 11, Pl. Memo. at 10).   She was examined again by Dr. Hayes on April 28, 2011, and found depression (R. 381).   On August 3, 2011, plaintiff continued to be diagnosed with depression (R. 442).

Dr. Catherine Hubbard Adams, Ph.D., examined plaintiff on October 24, 2011, and found that her mental impairments interfered significantly with her daily functioning (R. 449-53; Docket No. 11, Pl. Memo. at 18-19).   Dr. Adams found that plaintiff had problems with social environment, occupational, economic, and access to health care (R. 452).   Since plaintiff was not diagnosed with specific anxiety or mood disorder, Dr. Adams gave a diagnosis of Depressive Disorder, NOS (R. 452).   Dr. Adams then concluded that plaintiff's mental impairments "seem to interfere significantly with daily functioning" and that she had "minor difficulty with some mental demands of work tasks" (R. 453).   Plaintiff did not seem to have difficulty attending and sustaining concentration on basic tasks, but could not sustain persistence in completing work-like tasks, for her thoughts "seem to be very circumstantial which interfere with completion of tasks," and she had difficulty completing tasks within an acceptable timeframe (R. 453).

Dr. Jon Etienne Mourot, Ph.D. (R. 473-76), a state agency review physician (see Docket No. 18, Pl. Reply Memo. at 2), evaluated plaintiff on October 26, 2011 (R. 475), but found plaintiff moderately limited only in her ability to carry out detailed instructions and her ability to complete work in a normal workday without interruptions from psychologically based symptoms in evaluating her sustained concentration and persistence (R. 473, 474), and her ability to respond appropriately to changes in work setting and ability to set realistic goals or make plans independently of others, in evaluating her ability to adapt (R. 474).   Dr. Mourot opined that "objective evidence does not support marked impairment in adaptive functioning.   It appears that [plaintiff] is able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned & performed by rote; tasks have few variables & require little judgment; & supervision required is simple, direct, & concrete.   UNSKILLED" (R. 475; Docket No. 11, Pl. Memo. at 19).

The ALJ, however, rejected the opinions of Drs. Adams and Mourot (see R. 18, 24; Docket No. 11, Pl. Memo. at 18), finding that Dr. Adams' findings were not consistent with the other objective medical evidence of record (R. 24) and rejecting generally the state agency medical consultant (including Dr. Mourot) opinions that plaintiff had a severe mental impairment, although adopting their assessments on other bases where they agree with a light work level assessment (R. 25; see Docket No. 11, Pl. Memo. at 19).

The ALJ found that plaintiff had the residual functional capacity to return to her past relevant work as a bookkeeper based upon the opinion of the vocational expert that bookkeeping is sedentary skilled work (R. 26).   The ALJ concluded that she could perform the full range of light work (R. 20; Docket No. 17, Def. Memo. at 10).   Although plaintiff has some limitations due to

her impairments, the ALJ found that plaintiff was not "totally disabled and unable to perform work at a level consistent with the above residual functional capacity" (R. 25).   Thus, the ALJ found plaintiff was not disabled (R. 26).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.   Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e)

& 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.   Washington, supra, 37 F.3d at 1442.

## APPLICATION

In the instant case, plaintiff argues that the ALJ improperly rejected two medical sources (Drs. Adams and Mourot) in finding that plaintiff's anxiety and depression was a non-severe impairment (Docket No. 11, Pl. Memo. at 16-21; R. 18, 449-53, 452, 475).   Plaintiff next contends that the ALJ failed to evaluate properly plaintiff's credibility as to the intensity, persistence, and limiting effects of her symptoms (Docket No. 11, Pl. Memo. at 21-25; R. 21).

Defendant responds that plaintiff failed to show that she had a severe impairment at step 2 of the analysis (Docket No. 17, Def. Memo. at 10).   As for Drs. Adams and Mourot's opinions, defendant replies that Dr. Adams did opine that plaintiff's attention and concentration were intact and that her thought processes were within normal limits, concluding that Dr. Adams' opinion was not supported by her own examination findings (id. at 12).

Plaintiff replies that the ALJ rejected the opinions Drs. Adams and Mourot solely based on the ALJ's interpretation of the record (Docket No. 18, Pl. Reply Memo. at 1).   Plaintiff argues that defendant fails to explain why the ALJ did not refer or weigh the opinion of Dr. Mourot (id. at 1-2).

Plaintiff rejects defendant's marshalling of raw data to <u>post hoc</u> explanation to justify the ALJ's weighing of the views of Drs. Adams and Mourot (<u>id.</u> at 2).   Regarding her credibility, plaintiff argues that there was not substantial evidence to counter her complaints of pain and difficulty (<u>id.</u> at 3).

I.      Medical Source Opinions

Plaintiff argues that the ALJ made error at step two of the analysis as to the severity of plaintiff's mental impairment, requiring a remand (Docket No. 11, Pl. Memo. at 16-17), <u>see</u> <u>McHugh v. Astrue</u>, No. 11CV578, 2013 WL 4015093, at *9 (W.D.N.Y. Aug. 6, 2013) (Telesca, J.) (citing cases).   She claims that the ALJ rejected two medical opinions as to her mental condition without supporting evidence (Docket No. 11, Pl. Memo. at 16; <u>cf.</u> R. 24, 25).   Later, plaintiff argues that the ALJ did this by interpreting the medical record and not by finding any conflicting medical evidence or opinion (Docket No. 18, Pl. Reply Memo. at 1; <u>see</u> Docket No. 11, Pl. Memo. at 17-18), <u>see</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998) (ALJ is not free to substitute his own expertise against that of physician who submits an opinion); <u>Rosa v. Callahan</u>, 168 F.3d 72, 78 (2d Cir. 1999) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion). Plaintiff adds that the residual functional capacity needs to account for severe and non-severe limitations (Docket No. 11, Pl. Memo. at 17).

Defendant counters that a mood disorder was seldom mentioned by treating sources (Docket No. 17, Def. Memo. at 11; R. 25).   Defendant Commissioner argues that plaintiff's mental status examinations were consistently within normal limits (Docket No. 17, Def. Memo. at 11; R. 496, 403, 440, 300).   The Commissioner asserts that the ALJ considered, and then gave little weight, to the opinions of Drs. Adams and Mourot, and defendant concludes that the

treatment notes in the record support the ALJ's weighing of the two doctors' asserted contrary opinions (Docket No. 17, Def. Memo. at 12).

The ALJ's analysis was at steps four and five (whether plaintiff's impairment prevented her from her past work or any work at all) rather than step two (compare R. 18-19 with R. 24, 25). The basis for finding that plaintiff did not have a severe mental impairment was based upon the ALJ's consideration of the medical evidence in the record (R. 25), or finding that Dr. Adams' opinion was not consistent with the other objective medical evidence (R. 24) without pointing out expressly what the contrary evidence in that record was.   Defendant presents some of this evidence from combing that record, but the ALJ needed to make those findings rather than opining essentially on his own lay knowledge.   This application should be remanded to assess the medical record for plaintiff's claimed mental impairments.

II.      Plaintiff's Credibility

The ALJ did not credit plaintiff's credibility as to her intensity, persistence, and limiting effects of her symptoms when compared with the residual functional capacity assessment (R. 21). Plaintiff now argues that there was no substantial evidence to refute her claims regarding pain and difficulty.

Defendant responds that the medical record indicates that plaintiff's complaints were not credible because she had been treated for obesity, COPD, and high blood pressure, all with a fair measure of success (Docket No. 17, Def. Memo. at 14-15; R. 25, 498, 440).   The ALJ found that plaintiff did not follow treatment (for example not wearing prescribed compression stocking, R. 491, 25) thus justifying the ALJ's credibility determination (Docket No. 17, Def. Memo. at 15).

Plaintiff replies that there was no actual comparison of plaintiff's symptoms with her statement and the ALJ "simply supplied conjecture, with no link to the medical record to explain it" (Docket No. 18, Pl. Reply Memo. at 3).   Failing to address plaintiff's medical record in detail with her statements is legal error (id.), Spear v. Astrue, No. 13CV6017, 2014 WL 4924015, at *20 (W.D.N.Y. Sept. 30, 2014) (Payson, Mag. J.).

The Commissioner may discount a claimant's complaints of pain if the finding is supported by substantial evidence, Aponte v. Secretary Dep't Health and Human Serv., 728 F.2d 588, 591 (2d Cir. 1984) (Docket No. 17, Def. Memo. at 15; cf. Docket No. 18, Pl. Reply Memo. at 3).   But credibility determinations must contain specific findings based on substantial evidence in order to allow for review, Rozler v. Colvin, No. 12CV1000, 2014 WL 7358708, at *10 (W.D.N.Y. Dec. 23, 2014) (Telesca, J.) (Docket No. 11, Pl. Memo. at 22).   "A recitation of the evidence, without more, is insufficient to permit this Court to review the ALJ's credibility determination," Spear, supra, 2014 WL 4924015, at *20.   Here, the ALJ merely presented the recitation of the medical record without stating the specific inconsistency of that record to plaintiff's stated complaints to justify questioning her credibility.   Given the remand recommended above for plaintiff's depression, plaintiff's credibility could be re-examined with specific findings from the record to justify any refutation.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 17) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 11) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).   <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**   <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.   <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

13

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

_s/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
May 6, 2015

14